# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

UNITED STATES OF AMERICA,      )
                                        )

          Plaintiff,         )

                                        )

      v.                    )      Case No. 18-CR-04075-SRB

                                        )

JEFFERY WAYNE TAYLOR,       )

                                        )

          Defendant.     )

## MEMORANDUM OF DECISION

The matters before the Court are judgment on Defendant Jeffery Wayne Taylor's bench trial and Defendant Taylor's Motion for Acquittal on Count I (Doc. #72). After a thorough review of the evidence, the parties' supplemental briefing, and relevant caselaw, the Court now issues the following factual findings and conclusions of law, and enters the following verdict:

Defendant Taylor is found **NOT GUILTY** of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 as set forth in Count I; and

Defendant Taylor is found **GUILTY** of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as set forth in Counts II & III, and of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as set forth in Count IV.

## I. BACKGROUND

On July 11, 2018, the Government filed an Indictment charging Defendant Taylor with one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 (Count I), as well as two counts of distribution of cocaine base (Counts II & III) and one count of possession with intent to distribute cocaine base (Count IV) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. #11.) Count I alleges that between March 2, 2018, and June 8, 2018, Defendant Taylor knowingly and intentionally conspired with other persons to distribute a mixture or

substance containing a detectable amount of cocaine base (e.g., crack cocaine). Count II alleges that on April 3, 2018, Defendant Taylor knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine base. Count III alleges that on June 8, 2018, Defendant Taylor knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine base. Lastly, Count IV alleges that on June 18, 2018, Defendant Taylor knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine base.

This case was originally set for a jury trial, but Defendant Taylor later waived his right to a jury trial pursuant to Federal Rule of Criminal Procedure 23(a). (Doc. #65.) After confirming Defendant Taylor's waiver was an informed and voluntary decision and that the Government consented, the Court approved the waiver. On July 6, 2020, the undersigned presided over a one day bench trial on the above-stated charges. During trial, the Government offered fifty exhibits into evidence and called seven witnesses. Defendant Taylor did not offer any exhibits or call any witnesses. After submission of all the evidence and the conclusion of parties' closing arguments, the Court found Defendant Taylor guilty on Counts II, III, and IV, but took Count I under further advisement and directed the parties to submit additional briefing on Count I once the transcript to the bench trial proceedings had been published. Defendant Taylor subsequently filed the instant motion for acquittal of Count I, arguing the Government failed to offer enough evidence at trial to sustain a conviction for conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846.

## II. LEGAL STANDARD

The Government must prove each element of a crime charged in an indictment beyond a reasonable doubt. *United States v. O'Brien*, 560 U.S. 218, 224 (2010). Failure to prove any element beyond a reasonable doubt requires acquittal. *See* Fed. R. Crim. P. 29(a) ("the court on

the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction"). "In a case tried without a jury, the court must find the defendant guilty or not guilty" and "must state its specific findings of fact in open court or in a written decision or opinion." Fed. R. Crim. P. 23(c).

## III. DISCUSSION

The Court has considered all evidence and testimony presented, portions of which are discussed below. Any omission or failure to mention a particular piece of evidence or testimony below should not be construed as a comment on its probative value, as the Court reached its verdict based on the entire record. As an overview, the Court notes it found the testimony of all seven witnesses to be credible.

### A. FINDINGS OF FACT

Based on all of the evidence presented at trial and the Court's credibility determinations of the witnesses who testified, the Court makes the following fact findings:

1. In 2018, members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began a criminal investigation into the defendant, Jeffery Wayne Taylor ("Defendant").

2. During the course of the investigation, Defendant resided at 418 East Fifth Street in Sedalia, Missouri, which is located in the Western District of Missouri.

3. From March of 2018, through June of 2018, ATF agents utilized a confidential informant ("CI") to make 13 controlled purchases of cocaine base (e.g., crack cocaine) from Defendant at his residence on six different dates.

4. Specifically, ATF agents utilized a CI to purchase cocaine base from Defendant at his residence two times on March 2, 2018, two times on March 15, 2018, one time on April 3, 2018, three times on April 25, 2018, two times on June 1, 2018, and three times on June 8, 2018.

5. All of the controlled purchases were recorded via an electronic audio recording device that was provided to a CI by ATF agents.

6. Detective Kevin Klein identified the male voice on these recordings as Defendant, and only other voice on the recordings as the CI.

7. As part of the investigation, ATF agents conducted physical surveillance, and also installed a pole camera that was affixed at a location North of Defendant's residence which allowed

3

ATF agents to observe Defendant's residence via video feed at any time, including during all of the controlled purchases.

### March 2, 2018: Controlled Purchases

8.  On March 2, 2018, ATF Special Agent ("SA") Matthew Sprinkles met with a CI to make two controlled purchases of cocaine base from Defendant.

9.  The CI sent a text message to Defendant asking if he was home and if he had cocaine base.

10. The CI was searched, provided with controlled currency and an audio recording device, transported to the area of Defendant's residence and dropped off.

11. The CI walked into Defendant's residence, entered Defendant's residence, purchased cocaine base from Defendant, exited Defendant's residence, and walked back to waiting ATF agents.

12. Once the CI returned to SA Sprinkles location, the CI turned over 1.198 grams of cocaine base that the CI purchased from Defendant to SA Sprinkles. This substance was later confirmed to be cocaine base by Drug Enforcement Agency ("DEA") laboratory testing.

13. SA Sprinkles searched the CI again and did not find any additional drugs, guns, or currency.

14. During the second controlled purchase on March 2, 2018, SA Sprinkles and the CI followed the same protocol to prepare for the controlled purchase as for the first controlled purchase that day.

15. The CI was transported to the area of Defendant's residence and dropped off.

16. The CI walked to Defendant's residence, entered Defendant's residence, purchased cocaine base from Defendant, exited Defendant's residence, and walked back to waiting ATF agents.

17. The CI turned over 1.283 grams of cocaine base that the CI purchased from Defendant to SA Sprinkles. This substance was later confirmed to be cocaine base by DEA laboratory testing.

18. SA Sprinkles searched the CI again and did not find any additional drugs, guns, or currency.

## March 15, 2018: Controlled Purchases

19. On March 15, 2018, SA Sprinkles met with a CI in order to make two controlled purchases of cocaine base from Defendant.

20. During the first controlled purchase, SA Sprinkles searched the CI for guns, drugs and currency, provided the CI with controlled currency, and equipped the CI with an activated audio recording device.

21. The CI was transported to the area of Defendant's residence and dropped off.

22. The CI met with Defendant inside the residence and purchased 1.246 grams of cocaine base from Defendant.

23. The CI left Defendant's residence and met with waiting ATF agents where the CI turned over the cocaine base the CI purchased from Defendant and the audio recording device to the ATF agents.

24. Later on March 15, 2018, SA Sprinkles again met with a CI and searched the CI for guns, drugs and currency, provided the CI with controlled currency, and equipped the CI with an activated audio recording device.

25. The CI was transported to the area of Defendant's residence and dropped off.

26. A short time prior to the CI arriving at Defendant's residence, Defendant left his residence in a Cadillac.

27. The CI walked to Defendant's residence and sat on Defendant's front porch.

28. A short time after the CI arrived at Defendant's residence, Defendant arrived back at his residence, reached down to pick something up near the downspout at the corner of his residence, peaked around the corner of the house at the CI sitting on Defendant's front porch, and then walked over to meet the CI and let the CI into his house.

29. The CI entered Defendant's house with Defendant, and once inside, the CI purchased 1.263 grams of cocaine base from Defendant.

30. The CI exited Defendant's residence and walked to meet waiting ATF agents where the CI turned over the cocaine base that the CI purchased from Defendant to SA Sprinkles. This substance was later confirmed to be cocaine base by DEA laboratory testing.

31. SA Sprinkles searched the CI again and did not find any additional drugs, guns, or currency.

## April 3, 2018: Controlled Purchase

32. On April 3, 2018, SA Sprinkles and ATF Special Agent Chris Redies met with a CI in order to make a controlled purchase of cocaine base from Defendant.

33. Special Agent Sprinkles searched the CI for guns, drugs and currency, and did not find anything.

34. SA Sprinkles provided the CI with controlled currency with which to make a controlled purchase. SA Sprinkles provided the CI with an audio recording device and activated it.

35. A short time prior to the CI travelling to Defendant's residence, Defendant exited his residence, walked to an alleyway located behind his house, and returned and re-entered his residence a matter of minutes later.

36. SA Chris Redies transported the CI to Defendant's residence and parked in Defendant's driveway.

37. The CI exited SA Redies' vehicle and walked inside Defendant's residence. Once inside Defendant's residence, the CI met with Defendant.

38. The CI commented to Defendant that he was dressed up, and Defendant responded that he had to go to Jefferson City. Defendant asked the CI if "He wants two hundred," and the CI responded "Yeah."

39. Defendant asked the CI if the CI was "pinching off his shit?" The CI responded "No" that "He been my friend for a long time. I don't, I don't want to beat him like that. So why should I do that."

40. Defendant apologized to the CI stating "Sorry it's like this. It's jacked up outside."

41. The CI inquired as to why the product was so dark, and Defendant said "[i]t was just outside." Defendant continued, telling the CI "Just don't smoke the bag. The dope is good, but the bag might be."

42. The CI purchased 1.479 grams of cocaine base from Defendant, exited Defendant's residence, and returned to the inside of SA Redies' vehicle.

43. The CI turned over cocaine base that the CI purchased from Defendant and the audio recording device to SA Redies.

44. SA Sprinkles subsequently searched the CI again and did not find any drugs, guns, or currency.

6

45. This substance that the CI purchased from Defendant and turned over to SA Redies was later confirmed to be cocaine base by DEA laboratory testing.

### April 25, 2018: Controlled Purchases

46. On April 25, 2018, SA Sprinkles and SA Redies met with a CI who made three controlled purchases of cocaine base from Defendant that day. Prior to all three controlled purchases, SA Sprinkles searched the CI for guns, drugs and currency, and did not find anything.

47. During all three controlled purchases, the CI was provided controlled currency with which to make a controlled purchase.

48. During all three controlled purchases, the CI was provided with an activated audio recording device.

49. SA Chris Redies transported the CI to Defendant's residence during all three controlled purchases.

50. The CI purchased 2.09 grams of cocaine base from Defendant during the first controlled purchase.

51. The CI purchased 3.37 grams of cocaine base from Defendant during the second controlled purchase.

52. During the third controlled purchase, the CI exited SA Redies' vehicle, walked inside Defendant's residence, and met with Defendant to purchase cocaine base. Defendant told the CI that he did not have much left.

53. The CI asked Defendant if "that's all you got left?" and Defendant said, "Yeah, I mean, all I got is double, uhm, uhm, one dub left."

54. Defendant further told the CI that he "called somebody, but [he] tried to get him to just pick it up and bring it here, but, hell, but his fucking brother-in-law, I don't know how he can't trust him to just bring it here, but he ain't talking nothing yet. He's supposed to call me and let me know."

55. The CI purchased .121 grams of cocaine base from Defendant, left Defendant's residence, and met with waiting ATF agents where the CI turned over the cocaine base the CI purchased from Defendant and the audio recording device.

56. DEA laboratory testing later confirmed that all three substances the CI purchased from Defendant on April 25, 2018, were cocaine base.

### June 1, 2018: Controlled Purchases

7

57. On June 1, 2018, SA Redies met with a CI who made two controlled purchases of cocaine base from Defendant on that date.

58. Prior to both controlled purchases, SA Redies searched the CI for guns, drugs and currency, and did not find anything.

59. During both controlled purchases, agents provided the CI with controlled currency with which to make a controlled purchase.

60. During both controlled purchases, the CI was provided with an activated audio recording device. SA Chris Redies transported the CI to Defendant's residence during both controlled purchases.

61. During the first controlled purchase, the CI purchased 1.513 grams of cocaine base from Defendant.

62. During the first controlled purchase, Defendant provided the CI with cocaine base without requiring payment at that time, and the CI returned to Defendant's residence approximately twenty minutes later to obtain additional cocaine base and to render payment.

63. When the CI returned to Defendant's residence, the CI made payment for the first controlled purchase, and obtained an additional 1.341 grams of cocaine base from Defendant.

64. Following both controlled purchases, the CI turned over the cocaine base that the CI purchased from Defendant and the audio recording device to SA Redies. DEA laboratory testing later confirmed these substances to be cocaine base.

65. SA Redies searched the CI following both controlled purchases and did not find any additional drugs, guns, or currency.

### June 8, 2018: Controlled Purchases

66. On June 8, 2018, SA Redies met with a CI who made three controlled purchases of cocaine base from Defendant that day.

67. Prior to all three controlled purchases, SA Redies searched the CI for guns, drugs and currency, and did not find anything.

68. During all three controlled purchases, the CI was provided controlled currency with which to make a controlled purchase.

69. During all three controlled purchases, the CI was provided with an audio recording device which was activated.

8

70. SA Chris Redies transported the CI to Defendant's residence during the first two controlled purchases, and dropped the CI off a block away from Defendant's residence during the third controlled purchase.

71. During the first controlled purchase, the CI purchased .723 grams of cocaine base from Defendant.

72. During the second controlled purchase, the CI purchased 2.32 grams of cocaine base from Defendant. During the second controlled purchase, Defendant told the CI that he "just put it all in one big bag," and "I got an extra three pieces. One bag and those extra three pieces."

73. During the third controlled purchase, the CI purchased 1.26 grams of cocaine base from Defendant. During the third controlled purchase Defendant told the CI "They're pop. Don't get me wrong I like the money but if I lose the customer again, I lose the money. That's why I added a couple pieces on there a little extra for ya."

74. Following the controlled purchases, the CI turned over to SA Redies the cocaine base that the CI purchased from Defendant. DEA laboratory testing later confirmed these substances to be cocaine base.

75. SA Redies searched the CI following the transactions on June 8, 2018, and did not find any additional drugs, guns, or currency.

## June 18, 2018: Residential Search Warrant

76. On June 18, 2018, ATF agents, pursuant to a search warrant, searched Defendant's residence.

77. During the execution of the search warrant, ATF agents located the following items inside or on the outside of Defendant's residence: a box of plastic sandwich baggies in Defendant's kitchen, $210 in U.S. Currency in Defendant's living room, a digital scale in an upstairs bedroom, as well as a small torn plastic baggy and a plastic baggy that contained 1.24 grams of cocaine base that were located outside underneath the siding of the Northeast corner of the residence.

78. Between March 2018 and June 2018, surveilling agents observed Defendant, on multiple occasions, lean down and appear to pick something up near the location underneath the siding of Defendant's residence where agents found cocaine base on June 18, 2018.

79. During the search warrant at Defendant's residence, agents did not find any evidence of the manufacturing of cocaine, or cocaine base.

80. On April 3, 2017, in Pettis County, Missouri case number 16PT-CR01148-01, Defendant was convicted of manufacturing a controlled substance (cocaine base). During that investigation, agents also observed Defendant exit his residence, reach around the

foundation or downspouts of his residence, and return inside, in similar fashion as his conduct in the 2018 investigation.

## B. CONCLUSIONS OF LAW

The Court finds the record evidence and credible testimony presented at trial establishes Defendant Taylor's guilt on Counts II, III, and IV beyond a reasonable doubt. As for Count I, the Court finds the Government fails to establish Defendant Taylor's guilt beyond a reasonable doubt and, in turn, acquittal is required. The Court's conclusions of law for each Count are addressed below.

### 1. Count I: Conspiracy to Distribute Cocaine Base

In its Indictment, the Government alleges that between March 2, 2018, and June 8, 2018, Defendant Taylor "knowingly and intentionally combined, conspired, and agreed with others, unknown to the Grand Jury, to distribute a mixture or substance containing a detectable amount of cocaine base" in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. (Doc. #11, p. 1.) To support a conviction for conspiracy to distribute drugs under § 846, the Government must prove: "(1) that there was a conspiracy, i.e. an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Sanchez*, 789 F.3d 827, 834 (8th Cir. 2015) (quoting *United States v. Slagg*, 651 F.3d 832, 840 (2011)); *see also United States v. Lewis*, 976 F.3d 787, 794 (8th Cir. 2020); *Eighth Cir. Manual of the Model Crim. Jury Instr.*, No. 6.21.846A (2018). Defendant Taylor contends the Government fails to prove he entered into an agreement with an unknown person(s) to distribute cocaine base.

A conspiracy, in short, is an agreement among two or more persons to commit a criminal act. *United States v. Sanchez-Garcia*, 461 F.3d 939, 945 (8th Cir. 2006) (citation omitted) ("It is axiomatic that an agreement between two or more persons is the 'essence' of a conspiracy."). In

10

establishing that a defendant participated in a conspiracy, the Government does not need to prove the existence of a formal agreement; "showing a tacit agreement by understanding proven wholly by circumstantial evidence or by inferences from the parties' actions is sufficient." *United States v. Casas*, 999 F.2d 1225, 1229 (8th Cir. 1993); *Sanchez*, 789 F.3d at 834 ("An agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case."). Additionally, "[t]he fact that the identity of some or all other members of the conspiracy remains unknown will not preclude a conspiracy conviction . . . so long as the government has produced evidence supporting a reasonable inference of conspiracy." *Sanchez-Garcia*, 461 F.3d at 946 (citations omitted). However, "a mere sales transaction, standing alone, cannot support a conspiracy conviction." *United States v. Bewig*, 354 F.3d 731, 735 (8th Cir. 2003). The Eighth Circuit requires an understanding "beyond a sales agreement before the evidence can support a conviction for conspiracy." *Id.* (citations, quotation marks, and alterations omitted).

The Government argues its evidence adequately shows a conspiracy between Defendant Taylor and an unknown co-conspirator to distribute cocaine base, noting that such a conspiracy may be proven "wholly through circumstantial evidence." (Doc. #74, p. 3) (citing *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997)). In support of its claim that it has satisfied its burden of proof, the Government points to Defendant Taylor's multiple sales of cocaine base to a confidential informant, as well as statements made by Defendant Taylor during some of those controlled purchases. The Government contends that because no evidence indicates Defendant Taylor manufactured the cocaine base himself, Defendant Taylor must have been obtaining the cocaine base from another source—and, in doing so, formed a tacit agreement with that unknown party to distribute the drugs he obtained.

11

Defendant Taylor argues the evidence identified by the Government fails to show that he had a joint agreement with anyone to distribute cocaine base.[1]  Defendant Taylor states that even if the Court finds an unknown source supplied Defendant Taylor with the cocaine base he later sold to the confidential informant, the evidence does not show that he and the unknown source knowingly or tacitly agreed to further distribute those drugs.  He argues the evidence presented by the Government, at most, shows a buyer-seller relationship between Defendant Taylor and an unknown person, which falls short of what is required to sustain a conspiracy conviction.

After a careful review of the factual record in this case, the parties' briefing, and relevant caselaw, the Court finds the Government fails to show beyond a reasonable doubt that Defendant Taylor knowingly and intentionally conspired with another unknown person to distribute cocaine base, the first element of a conspiracy charge.  While the Government presents circumstantial evidence of multiple drugs sales and/or exchanges between Defendant Taylor and an unknown person, the evidence does not show anything more than a buyer-seller relationship.  *See Bewig*, 354 F.3d at 735 (noting evidence must show an understanding beyond a mere sales agreement); *United States v. Donnell*, 596 F.3d 913, 924–25 (8th Cir. 2010) (citation omitted) (noting that "[m]ere proof of a buyer-seller agreement without any prior or contemporaneous understanding does not support a conspiracy conviction because there is no common illegal purpose").  The fact that Defendant Taylor likely acquired cocaine base from an unknown source does not reasonably give rise to an inference that Taylor and the unknown party tacitly agreed to advance or resell the drugs to others.

---

[1] Defendant Taylor first contends the Government cannot establish that he conspired with the confidential informant, stating the confidential informant's multiple controlled purchases of cocaine base show only the existence of a buyer/purchaser relationship—not a conspiracy to distribute cocaine base to others.  The Government does not respond to this argument and, in any event, it is well-established that "there can be no indictable conspiracy involving only the defendant and government agents and informers." *United States v. Ramirez*, 350 F.3d 780, 785 (8th Cir. 2003) (citations, quotation marks, and alternations omitted).

Furthermore, no evidence indicates Defendant Taylor ever received any large or resale quantities of drugs from the unknown supplier(s), nor does the Government argue such quantities of drugs were involved in this case. *See United States v. Trotter*, 837 F.3d 864, 867–68 (8th Cir. 2016) (citations omitted) (noting that "evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute"). The drug quantities involved in the controlled purchases are amounts consistent with personal use, and the Government did not surveil Defendant Taylor traveling to, or meeting with, an unknown supplier to acquire or obtain resale amounts of cocaine base. *See, e.g.*, *Donnell*, 596 F.3d at 924–25 (finding a conspiracy to distribute methamphetamine where the conspirators repeatedly met to exchange resale quantities of the drug). Nor did the Government introduce evidence of any communications between Defendant Taylor and his unknown supplier(s) suggesting that large quantities of drugs intended for resale were being exchanged or may be exchanged in the future. Additionally, the various statements Defendant Taylor made during the controlled purchases do not reasonably indicate that he and an unknown supplier had a shared conspiratorial purpose to distribute more cocaine base. While Defendant Taylor may very well have wanted to obtain more cocaine base so he could then sell it to the confidential informant, that evidence does not show the unknown supplier and Defendant Taylor were acting in concert to do so. Without more, the fact that Defendant Taylor obtained cocaine base from someone else does not reasonably give rise to an inference that Defendant Taylor and an unknown party had agreed to distribute and resell cocaine base. *Cf. United States v. Prieskorn*, 658 F.2d 631, 634 (8th Cir. 1981) (upholding a conspiracy conviction where, in addition to the sale of large quantities of cocaine, independent evidence existed of an ongoing relationship between a buyer and seller to

distribute the drugs, as shown by several purchases of large drug amounts and a defendant's expressed interest in future drug shipments).

In sum, the Government has failed to satisfy the first element of Count I.[2]  Accordingly, the Government's evidence is legally insufficient to prove a violation of 21 U.S.C. § 846 as a matter of law, and the Court finds acquittal of Count I is warranted.

### 2.  Count II: Distribution of Cocaine Base

In its Indictment, the Government alleges that on or around April 3, 2018, Defendant Taylor "knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine base" in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  (Doc. #11, p. 1.) To support a conviction for distribution of cocaine base under § 841(a)(1) and (b)(1)(C), the Government must present evidence establishing beyond a reasonable doubt each of the following elements:

> *One*, the defendant intentionally transferred cocaine base, a Schedule II controlled substance; and

> *Two*, at the time of the transfer, the defendant knew that it was cocaine base, a Schedule II controlled substance.

*Eighth Cir. Manual of the Model Crim. Jury Instr.*, No. 6.21.841B; *United States v. Bradley*, 643 F.3d 1121, 1124 (8th Cir. 2011).  "Courts have interpreted the term 'distribute' . . . quite broadly to include not only the transfer of physical possession, but also other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price."  *Sanchez*, 789 F.3d at 836 (quoting *United States v. Luster,* 896 F.2d 1122, 1127 (8th Cir. 1990)).

---

[2] The Government's failure to satisfy its burden of proof on the first element of Count I requires acquittal. *See O'Brien*, 560 U.S. at 224.  However, the Court additionally finds that neither element two (whether the defendant knew of the conspiracy) nor element three (whether the defendant intentionally joined the conspiracy) were proven beyond a reasonable doubt.

14

Based on the evidence, the Court finds the Government established beyond a reasonable doubt that on or around April 3, 2018, Defendant Taylor intentionally transferred cocaine base to a confidential informant and, at the time of the transfer, knew he was transferring a controlled substance. Testimony at trial showed that Defendant Taylor made repeated sales of cocaine base to the confidential informant, and those sales, along with the statements Defendant Taylor made during those controlled exchanges, demonstrate that he intentionally transferred cocaine base. The evidence also proves that Defendant Taylor knew the substance he sold was a controlled substance, demonstrated by the comments he made during the controlled purchases (e.g., "the dope is good") as well as his efforts to conceal drugs around his residence, which were observed by multiple surveillance agents. Accordingly, the Government satisfies its burden of proof on Count II.

### 3. Count III: Distribution of Cocaine Base

As for Defendant Taylor's second charge for distributing cocaine base, in the Indictment the Government alleges that on or around June 8, 2018, Defendant Taylor again "knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine base" in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. #11, p. 2.) As stated previously, the Government must show Defendant Taylor intentionally transferred cocaine base and knew that the substance he transferred was a controlled substance. *Eighth Circ. Manual of the Model Crim. Jury Instr.*, No. 6.21.841B.

Based on the evidence, the Court finds the Government established beyond a reasonable doubt that on or around June 8, 2018, Defendant Taylor intentionally transferred cocaine base to a confidential informant and, at the time of transfer, knew that he was transferring a controlled substance. Again, evidence shows Defendant Taylor made numerous controlled sales of cocaine

15

base to a confidential informant, including three exchanges that took place at Defendant Taylor's residence on June 8, 2018. These repeated sales, together with Defendant Taylor's comments to the confidential informant during those sales, including his discussion of the quantity and quality of the product, show that the sales of cocaine base were intentional and Defendant Taylor knew he was transferring a controlled substance. In sum, the Government presents sufficient evidence to satisfy its burden of proof on Count III.

### 4. Count IV: Possession with Intent to Distribute Cocaine Base

In its Indictment, the Government alleges that on or around June 18, 2018, Defendant Taylor "knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine base" in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. #11, p. 2.) To support a conviction for possession of cocaine base with intent to distribute under § 841(a)(1) and (b)(1)(C), the Government must present evidence establishing beyond a reasonable doubt each of the following elements:

*One*, the defendant possessed a mixture or substance containing cocaine base;

*Two*, the defendant knew that he possessed a controlled substance; and

*Three*, the defendant intended to distribute some or all of the mixture or substance containing cocaine base to another person.

*Eighth Cir. Model Crim. Jury Instr.*, No. 6.21.841A (2018); *see also United States v. Dukes*, 758 F.3d 932, 939 (8th Cir. 2014) (citation and quotation marks omitted) ("To convict [a defendant] of possession with intent to distribute cocaine base, the government ha[s] to prove beyond a reasonable doubt that [the defendant] (1) knowingly possessed a controlled substance and (2) intended to distribute some or all of it."). Possession may be constructive or actual. *See United States v. Smith*, 104 F.3d 145, 148-49 n.2 (8th Cir. 1997) (distinguishing actual and constructive possession); *see also Eighth Circ. Manual of the Model Crim. Jury Instr.*, No. 8.02 ("A person

who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.").

Based on the evidence, the Court finds the Government established beyond a reasonable doubt that on June 18, 2018, Defendant Taylor possessed a mixture or substance containing cocaine base, he knew that he possessed such substance, and he intended to distribute all or part of that controlled substance to others. During the execution of the residential search warrant by ATF agents, the agents discovered a baggie containing small amounts of cocaine base wedged under the siding of Defendant Taylor's home, the same location where surveillance agents had observed Defendant Taylor bending down, examining, and reaching into on prior occasions. In addition to the cocaine base found inside the siding of Defendant Taylor's home, a search of his residence uncovered plastic baggies, a scale, and other items generally used in the packaging and distribution of cocaine base, as well as two-hundred dollars in U.S. currency. This evidence and related testimony, combined with the numerous controlled buys between Defendant Taylor and a confidential informant and the comments Defendant Taylor made surrounding those sales, satisfy the Government's burden of proving that Defendant Taylor knowingly possessed a controlled substance and intended to distribute all or some of it. Consequently, the Government satisfies its burden of proof on Count IV.

IV. **CONCLUSION**

Accordingly, it is hereby **ORDERED** that Defendant's Motion for Acquittal on Count I (Doc. #72) is **GRANTED** and, in turn, Defendant Taylor is found **NOT GUILTY** of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 as set forth in Count I.

17

It is **FURTHER ORDERED** that Defendant Taylor is found **GUILTY** of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as set forth in Counts II & III, and of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as set forth in Count IV.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

DATE: November 24, 2020